UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JODY A. CRAKER,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Case No.: C08-342 CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Jody Craker appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), and Supplemental Security Income ("SSI") disability benefits under Title XVI 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-nine-year-old woman, forty-two years old at the alleged disability onset date. She has an eleventh grade education and has work experience as a salesclerk, receptionist, and general clerk.

Plaintiff applied for SSI in October 2003 and DIB in November 2003 alleging disability since June 2001. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. On July 25, 2006, a *de novo* hearing was held before ALJ Adams

ORDER - 1

who found Plaintiff not disabled. Plaintiff appealed to the Appeals Council, which remanded with instructions that the ALJ consider Plaintiff's updated treatment records, further evaluate Plaintiff's mental impairments, further evaluate Plaintiff's residual functional capacity, if necessary, obtain evidence from a medical expert, and obtain evidence from a vocational expert. On June 27, 2007, ALJ Adams held a second hearing again taking testimony from Plaintiff who was represented by counsel, Dennis Kole, Esq., and a vocational expert. Administrative Record ("AR") at 663-725. The ALJ rendered an unfavorable decision on September 25, 2007. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On February 27, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

///

///

IV. THE DISABILITY EVALUATION

As the claimant, Ms. Craker bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 18, Finding 2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of "bilateral carpel tunnel syndrome, syncope/seizure disorder, depressive disorder, post traumatic stress disorder with agoraphobia, and alcohol abuse in remission since April 2003." AR 19, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.* In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 21, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff has the residual functional capacity to:

> [O]ccasionally lift and carry twenty pounds and frequently lift and carry ten pounds. The claimant can stand or walk for six hours in an eight hour workday. The claimant can sit for six hours in an eight hour workday. The claimant is limited in the upper extremities in the ability to push and pull due to carpel tunnel syndrome. The claimant is also limited to occasional fingering. The claimant can occasionally climb ramps and stairs but should never climb ladders, ropes and scaffolds due to the potential for a seizure episode. The claimant should also avoid exposure to hazardous machinery and heights. The claimant has slight limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; ability to make judgements [sic] on simple work-related decisions; interacting appropriately with supervisors; interacting appropriately with co-workers. The claimant has moderate difficulties responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. The claimant has marked difficulties in interacting appropriately with the public. The claimant can understand and remember short, simple instructions and carry out simple instructions.

AR 22, Finding 5.

Based on her residual functional capacity, the ALJ next found that Plaintiff could not perform her past relevant work. AR 26, Finding 6. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work

ORDER - 4

experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform a limited range of light work including work as a housekeeper and a bakery worker. AR at 27. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. AR 28.

## V. ISSUE ON APPEAL

Plaintiff presents the following general issue on appeal: Did the ALJ err in assessing the medical evidence or opinions? Dkt. No. 11.

## VI. DISCUSSION

Plaintiff's five and a half page brief does not set forth issues with which she assigns error to the ALJ's decision, nor does the brief cite any case law, Social Security rule, regulation, or any legal authority whatsoever. Plaintiff's brief is not compliant with the scheduling order[2] in this case, which directs that:

> "The plaintiff's Opening Brief shall contain a clear and concise statement, in a neutral fashion, of each and every disputed issue that the plaintiff is raising as the grounds for reversal and/or remand. (For example: "Issue No. 1- Whether the ALJ properly evaluated plaintiff's subjective complaints of pain." A general statement of the issue, such as "whether the ALJ's decision is supported by substantial evidence and free from legal error," is neither specific nor helpful to the Court.) In addition, the Opening Brief shall set forth the plaintiff's contentions as to each and every issued raised, to include citations to the page(s) of the administrative record and complete citations to relevant legal authority. The Opening Brief shall contain a clear statement of the relief requested."

Dkt. 8 at 2.

Defendant's responsive brief characterizes Plaintiff's issues as: (1) whether the ALJ improperly credited the opinion of Dr. Sandvik, and (2) whether the ALJ improperly found Plaintiff's impairments did not meet or equal a mental listing. Dkt. 12 at 3. Plaintiff did not file an optional brief in reply; therefore, the Court assumes Plaintiff agrees with Defendant's characterization of her supposed arguments.

---

[2] Plaintiff's counsel is reminded of his duty to follow this Court's orders, including scheduling orders, and of his duty to competently and zealously advocate for his client, which, at a minimum, requires setting forth the issues on appeal and making argument on behalf of his client supported by legal authority.

*A.    The ALJ did not err in assessing the medical evidence.*

The ALJ addressed Plaintiff's history within the five-step SSA framework and concluded she is able to perform some light work that accounts for her limitations including marked limitations in her ability to interact with the public, such as work as a housekeeper or bakery worker. AR 27. Plaintiff apparently alleges she is unable to work because of mental impairments of post-traumatic stress disorder, anxiety, and depression, along with frequent seizures and carpel tunnel syndrome in her hands. Plaintiff believes her problems stem from contracting meningitis as a teenager and from being the victim of an abduction and violent sexual assault [3] in her twenties. Plaintiff's brief recites a factual history of her symptoms and treatment but does not set forth specific arguments, other than possibly in the final sentence of her closing paragraph, which states:

> It is abundantly clear that Jody would not be able to endure the routine demands of entry-level work on a reasonably consistent basis, and, if these demands were placed on her, would decompensate in her ability to function such that work would be impossible and her symptomatic level of emotional difficulties would rise to equal or exceed the B criteria used in evaluating the functional limitations resulting from mental health impairment.

Dkt. 11 at 6.

Plaintiff's brief summarizes the findings of Dr. Kronenberg, Dr. Michels, Ms. Woodbury, and Dr. Sandvik, and compares the opinions and Global Assessment Functioning ("GAF") scores[4] assigned by each treatment provider. Plaintiff argues that Dr. Sandvik's opinions "stand

---

[3] According to newspaper clippings, medical and psychological reports in the record, and Plaintiff's testimony, Plaintiff, who was six months pregnant while walking with her young child in a stroller, was abducted and violently sexually assaulted. The record indicates that the attacker, although sentenced to life in prison, was released recently and now lives near Plaintiff causing an increase in her mental/emotional difficulties.

[4] The GAF score describes a person's overall level of functioning by assigning a numerical score on a scale of zero to one hundred. For example, A GAF score of 61 to 70 indicates some mild symptoms, (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text revision 2000) (DSM-IV-TR).

in isolation, and at a variance, to the other opinions and information contained in the records, none of which was available to assist Dr. Sandvik as part of the database upon which to offer the opinions he expressed." Dkt. 11 at 5.

Plaintiff appears to argue that the ALJ erroneously credited the opinion of Dr. Sandvik while giving less credit to the opinions of other doctors who found her more limited. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted).

Dr. Sandvik examined Plaintiff after the first ALJ hearing and before the second hearing. The Appeals Council directed the ALJ to consider this new evidence on remand. AR 76. Dr. Sandvik assessed Plaintiff's GAF score to be 65, indicating "mild to occasionally moderate symptoms" and noted that "[s]he can have difficulty in social and other functioning. She does function fairly well in certain contexts; she has meaningful interests, and some meaningful interpersonal relationships." AR 548. Dr. Sandvik also noted that Plaintiff "would need a fairly supportive environment to be able to perform work activities consistently through a normal workday, primarily owing to her social sensitivities and self-esteem. It is nevertheless of note that she has worked in one context for up to 8 years as a secretary. One had the impression at the interview that her capabilities are greater than her representation." *Id.* The ALJ gave significant weight to Dr. Sandvik's opinion regarding Plaintiff's mental limitations, but found that she had more "marked" limitations in her ability to interact with the public whereas Dr. Sandvik found only "moderate" limitations. AR 26.

The other treatment providers Plaintiff points to give opinions indicating her abilities are slightly more limited in some areas. However, Plaintiff does not take issue with any particular or

general finding of the ALJ's with respect to the weight he assigned to any treatment provider. Indeed, Plaintiff's summary of the evidence is similar in many respects to the ALJ's summary, which is consistent with the record. In December 2003, Dr. Kronenberg diagnosed Plaintiff with PTSD, dysthymia, and depression, and noted she has panic attacks and nightmares, but did not assign her a GAF score or opine whether she could work. AR 225. In January 2004, Dr. Michels diagnosed Plaintiff with PTSD, moderate depression, panic disorder with agoraphobia, and alcohol abuse in possible remission and assessed a GAF score of 50. AR 299. The ALJ noted that Dr. Michels found Plaintiff mildly impaired in persistence and pace and mildly to moderately impaired in focus and concentration, and that she was capable of understanding, remembering, and following through with both complex and simple instructions. AR 25, 299. The ALJ further noted that Dr. Michels believed that interactions with others would likely trigger anxiety attacks and that stress would exacerbate Plaintiff's symptoms. *Id*. The ALJ gave "significant weight" to Dr. Michels' opinion that Plaintiff has mild to moderate difficulties with concentration, persistence, and pace and that she has difficulties interacting with others, but did not believe the evidence demonstrates her mental limitations warrant a GAF as low as the GAF of 50 Dr. Michels assigned. *Id*. In December 2006, Plaintiff's chemical dependency counselor, Ms. Woodbury, CDP, MA, submitted a letter indicating she had seen Plaintiff since May 2003 and stated that she has difficulty due to seizures, memory impairment, pain from carpel tunnel syndrome and PTSD. AR 25, 538. The ALJ gave some weight to Ms. Woodbury's opinion and considered the opined limitations in determining Plaintiff's RFC; however, the ALJ correctly noted Ms. Woodbury is a non-acceptable medical source under SSA regulation and therefore gave her opinion only lay witness weight. AR 25-26.

Plaintiff does not assign error to any finding of the ALJ's with respect to the weight he assigned to any treatment provider's opinion or to the ALJ's assessment of the medical evidence. The Court finds the ALJ's assessment of the medical opinions and evidence is consistent with and supported by substantial evidence in the record and is therefore not in error. *Magallanes*, 881 F.2d at 751.

///

Medical Expert Consultation

Again, Plaintiff does not assign specific error or argue that a particular finding or conclusion of the ALJ's was incorrect, but appears to argue the ALJ erred in not taking testimony from a medical expert, stating, "[the ALJ] gave insufficient attention to the directive of the Appeals Council which stated 'if necessary, obtain evidence from a medical expert in psychiatry, to clarify the nature and severity of claimant's impairment.'" Dkt. 11 at 5-6. The Court notes the ALJ was not required by the Appeals Council to consult a medical expert, but was to consult one *if necessary*. *See* AR 76, Order of Appeals Council. The ALJ explained in detail the weight given to the physician's opinions and medical evidence, including the new evidence opinion of Dr. Sandvik. AR 25-26. The ALJ did not find, nor does Plaintiff cite, any inconsistency in the medical evidence or opinions that would benefit from further clarification by another medical expert. As discussed above, the ALJ's reasons given for weighing the medical evidence as he did were based on substantial evidence in the record. Therefore, the ALJ did not err in not consulting an additional medical expert.

*B.      The ALJ did not err in concluding Plaintiff does not meet any listing.*

Plaintiff appears to assert that she meets or equals a listing. In the final paragraph of her brief Plaintiff states, "…her symptomatic level of emotional difficulties would rise to equal or exceed the B criteria used in evaluating the functional limitations resulting from mental health impairment." Dkt. 11 at 6. Plaintiff does not point to any evidence that supports her argument. Plaintiff does not cite any specific listing that she alleges she meets. The Court assumes Plaintiff believes she meets one of the listings in section 12.00, which pertain to mental impairments.

An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(d), 416.920(d). A boilerplate finding is insufficient to support a conclusion that an impairment does not do so. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), *citing Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990) (holding ALJ erred by failing to consider evidence of equivalence to a listing). With respect to the "B criteria" of the mental listings, the ALJ explained that:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 [affective disorders], 12.06 [mental retardation], or 12.09 [substance addiction disorders]. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

AR 21.

After a detailed analysis of the evidence relevant to this framework, the ALJ concluded:

> [I]n activities of daily living, the claimant has mild restriction; in social functioning, the claimant has marked difficulties; with regard to concentration, persistence or pace, the claimant has moderate difficulties; and claimant has experienced no episodes of decompensation.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

AR 22.

Although Plaintiff bears the burden of proof she does not argue how or why the ALJ's conclusion in this regard was wrong, nor does Plaintiff set forth any theory as to why she meets or equals a listing. *Meanel*, 172 F.3d at 1113. The ALJ's analysis is supported by medical evidence and opinions in the record, including the opinions of Dr. Sandvik (AR 545-48) who found mild to moderate symptoms, and the state agency medical consultant who found mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (AR 21, 314-17). Accordingly, this Court finds the ALJ's determination that Plaintiff does not meet any listing based on substantial evidence in the record and is therefore not in error.

///
///

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this __ day of October 2008.

*Carolyn R. Dimmick*
Carolyn R. Dimmick
United States District Judge